3-23-0575 U.S. Bank National Association et al. Appellee v. Miguel Martin Appellant Mr. Supporta, you may proceed. Thank you, Your Honor, and may it please the Court, my name is Stephan Supporta, I do represent the Appellant Miguel Martin. This case touches and concerns the applicability of Illinois Supreme Court Rule 114A and its interplay with the summary judgment standard under the Illinois Code of Civil Procedure. Mr. Martin, my client, is a 68-year-old United States Navy veteran who proudly served his country during the Vietnam conflict. He's living in his home now. My understanding is it was a federally imposed moratorium suspending mortgage foreclosure actions against U.S. veterans through the end of this year. The brief that we filed, I have to apologize to the Court, the conclusion had a remnant from another brief in it, and it was a pretty terrible oversight when I saw it. The relief that we're seeking today from this Court is a reversal of the entry of summary judgment and judgment of foreclosure and sale entered in favor of U.S. Bank and against my client. And we're asking that the case be remanded with direction that Mr. Martin's mortgage obligation be modified by the Bank to a payment of $1,525.16 per month at the current interest rate of two percent, which is what the most current obligation provides, amortized over 480 months. The unpaid principal balance set forth in the brief is $1,929.56. There's a nine dollar per diem for interest, and we're asking that the interest be limited to the date the complaint was filed, April 5, 2018, through July 29, 2019. It's a total of $1,044 for that period. It should be added to the unpaid principal balance together with any escrow advances during that period, because we believe that the denial of the loan modification, July 29, 2019, was in error. Supreme Court Rule 114 is entitled loss mitigation, and it provides in pertinent part in subparagraph A that the plaintiff must, prior to moving for a judgment of foreclosure, quote, comply with the requirements of any loss mitigation program which applies to the subject mortgage loan. In our case, there are a few relevant facts and dates that I want to highlight quickly. Mr. Supporter, let me ask you a question, please. Yes, Your Honor. You indicate that the bank's loss mitigation procedure, you say that that is not the standard, but you never really do say what would be the standard then for the mitigation procedure. The loss mitigation requirements that were tendered by the bank under protective order, that is the standard that they have to be held to. When the court looks at the initial denial of my client's application for a loan modification on July 29, 2019, and we're focusing here on a streamlined modification, the stated reason for the denial was, quote, the modified payment, I'm paraphrasing, I shouldn't say quote, the modified payment will exceed the current payment by more than 25 percent, and therefore he's not eligible for a streamlined modification. That's of the appounded record, it's page 32. So the reason they gave for the denial was once they calculated what the modified payment would be, it would exceed Mr. Martin's current payment by more than 25 percent. Actually, wouldn't it have increased it by over 84 percent? I don't know. According to our expert, no. The calculation was an error, but they did say that that was the reason for the denial. We sent a request for information and we appealed the adverse ruling on August 28, 2019, and we asked for the services loss mitigation rules and work out procedures regarding modification. On September 9, 2019, they come up with a different standard and a different reason why the application was denied properly. They say we could not achieve a modified payment that was 25 percent below the current payment, therefore not eligible for streamlined modification. That's at pages 42 to 43 of the appounded record. On December 9, 2019, a few months later, they reiterated the servicer that is on behalf of U.S. Bank reiterated it could not achieve a modified payment that was 25 percent below the current payment. Therefore, he wasn't eligible for a streamlined modification. And what was wrong with that, Mr. Supporti? That's at page 39 of the appounded record. What was wrong with that? What's wrong with it is the initial denial said that they could only modify if the modified payment was below an increase of 25 percent. And when we appealed it, they gave us a different standard. They said, actually, we need to reduce it 25 percent below the current payment. They had two different, when I use the word standards, they had two different standards there. We need not even get into the rules and requirements that were that were eventually ordered, turned over under protective order to us. All the court has to look at is the difference between the reason for the initial denial and the justification for denying the appeal. It's two completely different standards. It's clear that they didn't even know their own loss mitigation rules and workout procedures. With regard to our request for information, both the September 9th and December 9th, 2019 letters said, quote, the information regarding loss mitigation rules and workout procedures regarding modification are generally deemed to be confidential, proprietary, or privileged, and not properly within the scope of this information request. Therefore, we're unable to provide the calculation of the modification review, as it is for internal purposes only. That's the impounded record at page 39, also 42 and 43. Both those letters had that denial. They're not going to tell us what the calculation was or how they did it and what their requirements are. We then requested from the circuit court, through the course of discovery, we asked for these requirements, and counsel raised the same objection. We went through the process. The Honorable Roger Rickman eventually ordered over the bank's objection on November 20th, 2019, that all loss mitigation rules and procedures be produced to our office under a protective order drafted by the bank on or before December 31st, 2019. It was at that time or some months thereafter that U.S. Bank retained Mr. Manetti's law firm, and we went through 18 months further of litigation, where eventually they shaped and contoured the initial protective order to more fully comply with Illinois Supreme Court Rule 114. So we eventually, after a year and a half, after the the internal regulations for loss mitigation were ordered produced, we finally got them. For our purposes this morning, the July 29, 2019, loan mod denial and the denial of the appeal on September 29, 2019, were examined by our loss mitigation expert Roberto Rivera, and he reached, to say the least, different conclusions than Richard Schweiner's conclusion, and Richard Schweiner was the loss mitigation affiant for the bank. He's the one that signed the Rule 114 loss mitigation affidavit, and it's become, I should say, the practice in this practice area that these loss mitigation affidavits are reduced to a written, but there's no facts at all to back it up. But both Schweiner and Rivera disagreed over whether the denial of the loan mod and the appeal was proper. I would note that Exhibit D, in support of the bank's motion for summary judgment, had a 10-page excerpt from Mr. Schweiner's deposition that we took. However, it was not verified by a court report. It was an unverified 10-page excerpt. I don't think it should have been even considered by the court because it wasn't verified. Counsel argued in the circuit court and argues before this court the conclusions reached by Mr. Rivera applying their own standards to the loan mod denial from July 29, 2019, and the appeal, etc. Even if we allow the unverified excerpt from the deposition to stand, and I don't think we should, and certainly the arguments of counsel are not a substitute for evidence. There are disputed issues of material fact raised in the contradictory affidavits, and this in and of itself should have precluded the circuit court from entering summary judgment in favor of the bank and against my client. Now, we found out through the course of written discovery that reducing the monthly payment by 25 percent, in fact, was not a criterion for the streamlined modification program, and I cite the impounded record at pages 214 to 15. It's in our appendix, page 42, paragraph 8b. This is the waterfall analysis. Page 672 of the impounded record, in paragraph 8b, the appendix at 48. The impounded record is 678. So the reason given was not in accordance with their own regulations and guidelines, and therefore, it violated Supreme Court Rule 114. Mr. Supporta, when you filed your response in July of 19, you raised no affirmative defense, did you? The response to the... The answer to the complaint? The answer to the complaint? I'd have to look back at it, but if that's what the court is representing, I think that's accurate. Thank you. On or about December 24, 2020, U.S. Bank new servicer, New-Res, sent Martin a modification approval notice offering him a modified payment of $2,569.63 per month. This represented an increase of more than 25 percent over his current payment, and that set forth of the impounded record at pages 44 through 70. Now, our loss mitigation witness, Mr. Rivera, addressed that modification approval notice of December 24, 2020, and concluded it was not in compliance with the requirements of any loss mitigation program that applies to the subject alone in violation of Supreme Court Rule 114A. Had New-Res followed its own internal loss mitigation policy and guidelines and requirements, it would have yielded a modified monthly mortgage payment of $1,525.16, and not the $2,569.63 monthly payment that was offered. That conclusion is in the appendix at page 50 and the impounded record at 680. Now, their loss mitigation expert did not address this modification approval notice at all, so Mr. Rivera's testimony, sworn affidavit, is the only evidence of record with regard to that final modification approval notice. Mr. Cipolla, yes. If your time is up, you'll have time and reply. Okay. Mr. Minnelli, you may respond. Thank you, Your Honor. May it please the Court, my name is Lou Minnetti. I represent Plaintiff Appali, U.S. Bank National Association as trustee. Your Honor, Mr. Martin insists that Rule 114 should have prevented the entry of the foreclosure judgment because U.S. Bank didn't comply with its own modification procedures and guidelines, and that he should have received a modification under certain terms, but this ignores the operative part of the rule that specifies its enforcement. The face of the rule itself, which is the subject of this appeal, Your Honor, Mr. Minnelli does say that plaintiffs must comply with the requirements for any loss mitigation proceedings, but crucially, its enforcement section, Section 114D, says the Court may either sua sponte or on the motion of a mortgage or stay the proceedings or deny the foreclosure judgment if plaintiff fails to comply with the requirements of this rule. As stated by the Simpson case in the First District, the rule is not written in mandatory terms. The enforcement section specifically notes that the Court may, rather than shall, deny entry of judgment if the rule is not satisfied. This was echoed by the First District again in the Smith case, where it said Rule 114 is not mandatory and leaves some room for judicial discretion regarding the level of strictness of its enforcement. For example, in Smith... Mr. Minnelli, you're leading me to a question I had. I was going to ask Mr. Soporta. So, you did not put what you think the standard of review is in your brief. Mr. Soporta had indicated that it is a de novo review, which normally a summary judgment motion that might be accurate. Do you still think when the entirety of Mr. Soporta's case rests on Supreme Court Rule 114 and the word may, that de novo review is the accurate standard of review? I... Certainly, the standard of review for a summary judgment motion is de novo. In fact, the Smith case in the First District, just without much comment, said their standard of review was de novo. However, it's inescapable that Rule 114 invites judicial discretion as to where the parties are in cross-mitigation and to what level of strictness the judge is going to hold the rule. And in that instance, Your Honor, if it's a de novo review to look to see if the court properly exercised its discretion, it gets to arguing in circles. I don't want to argue to Your Honors that the standard of review for summary when the particular argument is as granular as it is here, that Rule 114 was not complied with and they need to get past 114D. I don't know how you argue you should prevail unless you argue that the judge somehow abused their discretion. We can all agree that if the defense in the case and what was ruled on was the substance of the complaint, you know, the numbers the procedure followed, you know, then it is always de novo. But I just, when you when you read 114 and it's the only issue we have before us, seems unique. I agree, Your Honor. I agree and I don't know how to square that with the general rule about summary judgment orders, but clearly Rule 114 invites judicial discretion given the circumstances and given the positions of the parties. And in Smith, that was the case. The borrower argued that the judgment was improperly entered because it was an old 114 affidavit. The borrower argued it was outdated and the First District affirmed judgment and it said even if Wells Fargo failed to comply with Rule 114, the trial court had discretion to still grant Wells Fargo's motion for judgment for foreclosure and sale. Again, Your Honor, talking about discretion in the context of an otherwise de novo review. Here, the 114 affidavit complies with the form and substance of the rule itself. I don't think Mr. Support is arguing otherwise. He's arguing the judgment's improper because he wasn't given a specific loan modification. But he's ignoring, in myopically focusing on Section A, he's ignoring the enforcement provision of Rule 114d in that he's not entitled to any specific form of loss mitigation. This would be true under any legal rubric. Regulation X, which implements the Real Estate Settlement Procedures Act, specifies that nothing in the regulations entitles a borrower to any specific form of loss mitigation. Indeed, to the extent in his reply brief, he argues that the that Rule 114 is mandatory and he is entitled to demand that the lender comply. Again, this comes from a focus on 114a to the exclusion of D, which states how the rule is enforced. It clearly invites judicial discretion and a decision, given the specific circumstances. And that was done here. The trial court judge thoughtfully and thoroughly laid out what his position was, as far as the points made by the parties and where they were in their loss mitigation, and he decided to proceed with judgment. After hearing all the arguments. Regarding Martin's arguments about the guidelines themselves, their merits, he relies heavily on his conclusions from his purported expert Rivera, going as far to say, even today, that the only thing this court can consider are Rivera's conclusions in his report. This is not correct. Expert testimony is proper when the subject matter of an inquiry is such that only a person with expertise in that area is qualified to give a judgment. Matters of basic arithmetic, as we cite to authority in our brief, specialized knowledge is not required for that, so expert testimony is not needed. Here, both the parties rely on the guidelines themselves. They're in the record. They were relied on by both parties. Both parties invoke them regarding their dispute and their disagreement, and it is the case that expert testimony was not needed, and it's certainly not the case that the only word on the matter that this court can listen to is Mr. Rivera. Furthermore, Martin and Mr. Rivera are incorrect. U.S. Bank complied with its own guidelines when it denied the modification in July of 2019. What's the purpose of 114, Mr. Linetti? During the height of the financial crisis and the attendant explosion of foreclosures in 2008, 08, 09, 2010, the purpose of 114 was to have the court have sufficient information to see if lenders and borrowers were engaging in loss mitigation to avoid foreclosure, which is why Rule 114 requires certain information. It's an informational tool. Rule 114A is written such that this is what you need to give the court and comply with, but D clearly takes that required information and turns it into a procedural tool the court can use to look at each individual case between the borrower and the bank and see if maybe the court needs to step in and stay things, or maybe the court needs to step in and delay summary judgment in these circumstances, as they'd be in a good position to do having living with these foreclosure cases. So that's what the purpose of Rule 114 is, Your Honor. Is that ever challenged constitutionally? No, I don't believe so. Interesting. So, Your Honor, as you're aware, I do not see the light with the recording. Oh, you're still on green. You can still proceed. Thank you, Your Honor. So, the steps of the loan modification, this specific program, the streamlined modification, there are specific requirements. They're not in dispute. The arrears are capitalized. The mortgage loan to value is reduced to 95 percent or the minimum allowed under the deal, but there's a cap on how much the principal can be reduced to 50 percent of the unpaid, the capitalized unpaid principal balance. The interest rate is then reduced to a minimum rate of 4 percent, and the term can be extended into 480 months. Mr. Minetti, so that I'm clear. When you say the principal balance, it's not the original note principal balance. It is the amount that was renegotiated on the first modification, I believe, the $442,000. It would be that amount of the principal at that point? It would be the capitalized arrears, Your Honor. Okay, thank you. Yes. So, if after that analysis is done, if the payment savings aren't between a penny and 20 percent, they redo those four steps to see if the monthly payment exceeds 25 percent of the current monthly payment. And if it does, the loan mod can't be offered. Here, crucially, Martin's monthly payment was already incredibly low due to a prior loan modification. In 2016, it was attached to the complaint in the record. He was given a modification that deferred $278,000 in principal. So, $278,000 is set aside and doesn't impact, under that modification, his monthly principal and interest. It's more than a third of the loan amount. At the time, and this is explained in the September 9th letter in their map, which is in the record, at the time his monthly payment was $1,100 and change. After the analysis, the modified loan would have been $2,200 and change, an increase of 84 percent. So, under the streamlined waterfall analysis, the modification could not be extended under that program because it didn't qualify. Regarding the letters, the letters aren't inconsistent. The July 2019 letter says they couldn't achieve savings greater than 25 percent. And the September 9th 2019 letter says they couldn't achieve a reduction of 25 percent or an increase or less than 25 percent increase. So, only the September letter is speaking to both run-throughs of the analysis where first they look for a reduction and then they look to see, well, will it increase too much? Whereas the July letter only mentions one, but it doesn't mean that they're inconsistent. And certainly, given the numbers here, he didn't qualify given the staggering amount of the increase that it would have reflected. So, also Rivera's points in opposition to summary judgment were facially incorrect, which is why the court held there was no material issue of fact. He says, for example, that the interest rate should have been knocked down to two percent, but the minimum rate allowed under the waterfall analysis was four percent, and Rivera concedes that in his report that the number would have been four percent. He also says the fair market value of was 265 percent. So, the amount of the modification sort of simply had been slashed to that amount. But again, the guidelines explicitly state that there's a cap on the amount of reduction that can occur, which Rivera facially doesn't take into. There was no issue with how U.S. Bank ran its numbers and it simply doesn't show an error on U.S. Bank's part. They complied with the guidelines. Moreover, Martin's arguments about the December 24th modification are erroneous. A year later, a modification offer was made to Martin. It was a pure settlement offer to resolve an active case. He claims, Martin, that this demonstrates that U.S. Bank was never bound by any guidelines for any program, and it simply could have offered whatever it wanted to offer Martin in this case. That's incorrect. The two modifications are fundamentally different. The 2019 modification was a streamlined modification that Martin applied for. It was governed by distinct guidelines. The 2020 modification offer was to resolve an active lawsuit. This is exemplified by U.S. Bank Council's January 2021 email saying to Martin's council that the trial plan and attendant proposed modification was approved as a way to settle this matter, and if it was accepted, U.S. Bank's council would have prepared a settlement agreement with terms such as confidentiality and a release of claims. It's clearly a pure settlement offer. Martin, in his reply brief, says that any offer made in an active foreclosure case is a pure settlement offer. This is not correct. The July 29th letter says repeatedly, thank you for your request for mortgage assistance. We conducted our review of the application and the information provided, and they determined that a modification wasn't applicable, or wasn't. Your time is up now, Mr. Minetti. Thank you. Yes, sir. Thank you. Any questions from the court? None. No? Okay. Mr. Soporta, you may respond to your reply. Thank you, Your Honor. With regard to rule 114D, having the word may in it, and enforcement, and council saying that it invites judicial discretion, any Supreme Court rule to be applied by the circuit court, the circuit court has discretion whether to apply it or not. We cite the case of Bright v. Dickey, which had to do with rule 183 motions. For extension of time, it was within the context of answering a request to admit these rules, our Supreme Court, not the first district, but our Supreme Court said these rules are not aspirational. And certainly, a circuit court has discretion to determine whether reasonable cause exists under rule 183 to grant the extension of time. And it's often quoted language that, from our Supreme Court, that these rules are not aspirational and non-moving parties should not be required to justify application of a rule before it will be rule 114 to this case. We've distinguished both the Smith case and the Simpson case in our reply brief. Smith is clearly distinguishable from our case talking about discretion of the trial court, whether to grant a summary judgment or not. In that case, Tyrone Smith did not file a counter-affidavit in opposition to the bank's rule 114 loss mitigation affidavit. In our case, we did. In our case, we litigated this matter in order to get the requirements for loss mitigation that U.S. Bank and its servicers utilize. And we did have an extensive counter-affidavit from our expert. Tyrone Smith didn't do anything other than complain that perhaps the rule 114 affidavit was stated. In the Simpson case, that involved a mortgagor who was deceased. And obviously, a deceased mortgagor cannot apply for a loan modification, nor could its heirs. So their raising rule 114 didn't make any sense, and the court properly exercises discretion in saying it wasn't applicable. Neither of these fact patterns apply here. And the court asked counsel the purpose behind rule 114, and that's set forth in paragraph 18 of the Smith case. It references the comments. It was adapted in response to a quote, huge increase in foreclosures. Found it was in the best interest of the public to work out possible mortgage refinancing rather than foreclose. That's the committee comments to paragraph 8. Turning to page 14 of counsel's response brief. At the bottom, I want to point out a couple of things. Under the waterfall analysis that's set forth in the confidential record at pages 214 and 15, also part of our appendix at 35 to 36, it clearly states that there's been some dispute over lowering the interest rate to 2%. Well, if you look at the complaint, like I stated earlier, the initial loan mod lowered the interest rate to 2%, and if you look at step 8 and step 3, they're both called interest rate reduction, and the last line is, or the current contractual rate if it is already lower. So for them to do the calculation of 4% was in error. The current contractual rate was 2%, and that's what should have been applied under their own waterfall analysis. In addition, the interest-bearing balance equals 95% of the fair market value of the property. When counsel says it can only be reduced by 50% of the capitalized arrears, that's misleading. That's not what it said. The sum of the principal forgiveness and forbearance is not to exceed 50% of the capitalized. I think you're muted. Oh, there you are. No, I am, but your red light is on. Okay. Thank you. Any questions from the court? One, the 2% that you were referring to was for the non-deferred principal. After, under the other modification, they had already deferred the $278,000, correct? Correct. My understanding of the current modification, there was an interest-bearing portion and a non-interest-bearing portion. The interest-bearing portion was 2%. Correct. That was back on December 1st of 2016 when they deferred the $278,000. Right. When you look at the waterfall analysis, they need to lower the interest rate to the current contractual interest rate if it is already lower. That's in their own analysis. Yeah. Okay. Well, any further questions from the court? No. Okay. Well, thank you, counsel, both for your arguments. This matter will be taken under advisement. A written disposition shall issue.